UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NORVETT VARDIMAN, et al., | ) |  |
|---|---|---|
| Plaintiffs, | ) |  |
| v. | ) | No. 4:17CV2358 RLW |
| UNITED STATES OF AMERICA, et al., | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant United States of America's ("Defendant USA") Motion to Dismiss for Lack of Subject Matter Jurisdiction. (ECF No. 24) The motion is fully briefed and ready for disposition. Upon thorough consideration of the motion and related memoranda and exhibits, the Court finds it lacks subject matter jurisdiction and will therefore grant Defendant USA's motion and dismiss the claims against Defendant USA set forth in Plaintiffs' Complaint.

## I. Background

On September 1, 2017, Plaintiffs filed a Complaint in federal court, alleging Defendant Aaron Booker, Jr. ("Booker"), a United States Postal Service ("USPS") worker, caused a vehicle accident on March 29, 2016 while driving a USPS vehicle, injuring the driver, Plaintiff Norvett Vardiman, and her passengers, Plaintiffs Ronnie Gooch, Ania Warner, Michael Hudson, Dennis Royal-Reed, and Charles Singleton. (Compl. ¶¶ 11-16, ECF No. 1) Specifically, the record shows Booker was employed by the USPS as a City Carrier from March 9, 2013 through May 27, 2016. (Def.'s Ex. A, ECF No. 25-2) He was assigned to Postal Route 3941, which covered an area within and around an area known as the Hill neighborhood in St. Louis, Missouri. (Def.

Ex. B, ECF No. 25-3; Boyd-Garner Dep. 48:22-49:4, Def.'s Ex. N, ECF No. 25-15) The route was about a mile and a half from Booker's tour-of-duty station at the Southwest Station Post Office. (Booker Dep. 35:13-23, Def.'s Ex. O, ECF No. 25-16; Def.'s Ex. A) His shift began at 8:00 AM and finished at 4:30 PM. (Def.'s Ex. C, ECF No. 25-4)

On March 29, 2016, between 4:20 and 4:30 PM, Plaintiffs were driving eastbound on Interstate 70 ("I-70") through downtown St. Louis, near the St. Louis Arch grounds. (Def.'s Ex. E, ECF No. 25-6) Their vehicle was struck by a USPS vehicle driven by Booker, who left the scene of the accident. Plaintiffs attempted to pursue the postal vehicle and were able to contact 911 and provide a photo of the vehicle's license number. (Def.'s Ex. E p. 5; Def.'s Ex. F, ECF No. 25-7)

The Postal Handbook provides, "[d]o not deviate from your route for meals or other purposes unless authorized by your manager or if local policies concerning handling out of sequence mail permit minor deviations." (Def.'s Ex G p. 2 ¶ 131.31, ECF No. 25-8) Booker admitted no one is authorized to be outside their route during hours of the postal service. (Booker Dep. 41:24-25) He was not authorized to be downtown on I-70 on the date of the accident. (Boyd-Garner Dep. 68:18-69:5) After being notified of the incident, Booker's Station Manager, Karen Boyd-Garner, began an investigation which revealed black scuff marks and dents on the postal vehicle. (Boyd-Garner Dep. 12:19-13-10; Def.'s Ex. H, ECF No. 25-9) When confronted about the incident the following day, Booker denied any involvement and claimed he was the victim of a hit and run on Hampton Avenue. (Def.'s Ex. I, ECF No. 25-10) During his deposition, Booker stated he was not driving at the time of the accident, but someone else could have used the vehicle. (Booker Dep. 41:8-19)

2

The vehicle utilization report for Booker's vehicle on the date in question indicated he deviated 34 miles off his route. (Def.'s Ex. J, ECF No. 25-11) An activity report for Booker's March 29 route showed he made a scan at 14:56 PM and no other scan until his last delivery at 16:40 PM. He returned to the office at 16:49 PM. (Def.'s Ex. K, ECF No. 25-12) Ms. Boyd-Garner surmised Booker removed the battery from his scanner during this hour and fifteen minute time period of no activity. (*Id.* at p. 4) Pursuant to the internal investigation, Booker was placed on off-duty status and ultimately removed from employment on May 27, 2016. (Def.'s Ex. L, ECF No. 25-13; Def.'s Ex. M, ECF No. 25-14)

In Plaintiff's Complaint, they bring claims against Defendant USA pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* Plaintiffs previously submitted administrative tort claims against Defendant USA, but the claims were denied on the grounds that Booker was not acting within the scope of his employment. Thereafter, Plaintiffs filed their Complaint in federal court, alleging Defendant USA is liable for the acts of Booker under the theory of respondeat superior because he was acting within the scope of his employment duties at the time of the collision (Counts I, V, IX, XIII, XVII, and XXI). Plaintiffs further allege Defendant USA negligently hired/trained Booker (Counts II, VI, X, XIV, XVIII, and XXII). Finally, Plaintiffs contend Defendant USA negligently supervised/retained Booker as an employee (Counts III, VII, XI, XV, XIX, and XXIII).

On August 29, 2019, Defendant USA filed the instant motion to dismiss, asserting the Court lacks subject matter jurisdiction because Booker was not acting within the scope of his employment at the time of the vehicle accident. Plaintiff responds Booker was acting in the course and scope of his employment when he crashed his USPS vehicle into Plaintiffs' vehicle. Defendant USA further asserts it is entitled to the discretionary function exception under the

3

FTCA. Plaintiffs deny the discretionary function exception applies because Booker was allegedly driving while on a suspended license at the time of the accident.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (internal citations and quotation marks omitted). "The purpose of a Rule 12(b)(1) motion is to allow the court to address the threshold question of jurisdiction, as 'judicial economy demands that the issue be decided at the outset rather than deferring it until trial.'" *B.A. v. Missouri*, No. 2:16 CV 72 CDP, 2017 WL 106433, at *1 (E.D. Mo. Jan. 11, 2017) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). To dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "'the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.'" *Swiish v. Nixon*, No. 4:14-CV-2089 CAS, 2015 WL 867650, at *2 (E.D. Mo. Feb. 27, 2015) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)). "Where, as here, a party brings a factual attack, a district court may look outside the pleadings to affidavits or other documents." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018) (citation omitted). Further, in a factual attack "the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence." *Id.*

The United States is immune from a law suit unless it consents. *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007). However, Congress waived this sovereign immunity "'by enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment.'" *Id.* (quoting *C.R.S. by D.B.S. v. United States*, 11

4

F.3d 791, 795 (8th Cir.1993)). "The FTCA serves as a limited waiver of sovereign immunity, opening the door to state-law liability claims against the federal government for harm caused by government employees." *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019). The FTCA "waives sovereign immunity in two different sections of the United States Code. The first confers federal-court jurisdiction in a defined category of cases involving negligence committed by federal employees in the course of their employment." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006); *see also* 28 U.S.C. § 1346(b)(1). The second waiver makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances, but [ ] not [ ] for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674; *Dolan*, 546 U.S. at 485.

The FTCA also exempts certain categories of claims set forth in 28 U.S.C. § 2680 such that the bar of sovereign immunity remains. *Dolan*, 546 U.S. at 485. Applicable to this case, the discretionary function exception in 28 U.S.C. § 2680(a) places a statutory limitation on this waiver by precluding "suit against the government for harm caused by a government employee's acts if those acts are subject to discretion that is 'grounded in social, economic, and political policy.'" *Buckler*, 919 F.3d at 1044 (quoting *Herden v. United States*, 726 F.3d 1042, 1047 (8th Cir. 2013)). "A waiver of sovereign immunity is strictly construed in favor of the United States, and the party bringing suit bears the burden of demonstrating waiver." *May v. United States*, No. 17-04157-NKL, 2017 WL 6419298, at *2 (W.D. Mo. Dec. 15, 2017) (citations omitted).

### III. Discussion

Defendant USA argues dismissal under Rule 12(b)(1) is warranted because Booker was not acting within the scope of his USPS employment when the accident occurred. Plaintiffs assert a presumption exists that Booker was acting in the scope of his employment while driving

5

the USPS vehicle, and Defendant USA has failed to overcome the presumption. Defendant USA also contends the discretionary function exception under the FTCA applies and bars Plaintiffs' claims of negligent hiring/training and negligent supervision/retention. However, Plaintiffs contend the discretionary function does not apply because USPS should have terminated Booker's employment in 2013 due to his poor driving record.

## A. Course and Scope of Employment

The FTCA waives sovereign immunity if an employee is acting in the course and scope of his employment. *Dolan,* 546 U.S. at 484. The parties agree there is a presumption Booker was acting in the course and scope of his employment at the time of the accident because Booker was driving a USPS vehicle during his normal working hours and was paid during the time he deviated from his assigned route. However, the dispute now centers around whether Defendant USA has presented substantial evidence to overcome this presumption. Where an employee commits a tort through use of a vehicle, a presumption exists that the employee was acting in the scope of his or her employment when that vehicle is owned by the employer and driven by the employee. *Ewing-Cage v. Quality Prods., Inc.,* 18 S.W.3d 147, 150 (Mo. Ct. App. 2000) (internal quotation and citation omitted). "This presumption disappears only when the defendant introduces substantial controverting evidence." *Id.* (citation omitted).

Defendant USA asserts Booker deviated from his postal route without authorization when his postal vehicle collided with Plaintiffs' vehicle. Thus, Defendant USA argues Booker was not acting in the scope of his employment. Plaintiffs, on the other hand, assert the USPS failed to conduct a full investigation yet concluded Booker acted outside the scope of his employment. Plaintiffs contend this summary conclusion is insufficient to overcome the presumption that Booker was acting within the course and scope of his employment with the USPS.

6

The Court finds Defendant USA has met its burden of demonstrating Booker acted outside the scope of his employment at the time of the vehicle accident. The record shows, and Plaintiffs have not refuted, that Booker was outside the parameters of his mail route when the accident occurred. (ECF No. 25-6) Plaintiffs testified that the accident happened on I-70 in the vicinity of the St. Louis Arch, which was several miles from Booker's route. (Def.'s Ex. D1; Singleton Dep. 25:8-28:10, Def.'s Ex. P, ECF No. 25-17; Hudson Dep. 18:16-20:13, Def.'s Ex. T, ECF No. 31-2; Gooch Dep. 28:10-31:20, Def.'s Ex. U, ECF No. 31-3) Further, the USPS handbook stated postal drivers may not deviate from their route, and Booker acknowledged he was not allowed to drive the vehicle outside the designated boundaries during the hours of postal service. (Def.'s Ex. G p. 2 ¶ 131.31; Booker Dep. 41:24-25) Postal drivers also may not use the vehicle for any purposes other than delivering mail on their route without prior approval. (Boyd-Garner Dep. 64:20-65:2) The evidence shows Booker deviated from his route a total of 34 miles. (Def.'s Ex. J) He was involved in the accident while driving eastbound on I-70 where he had no authorization to drive or conduct USPS business anywhere near the accident site. (Boyd-Garner Dep. 19:13-16). The Court finds this was not within the scope of employment wherein he could have been conducting USPS business.

Plaintiffs argue, however, that the dual purpose doctrine applies because Booker's job required driving, and he was delivering mail both before and after the accident. Thus, whether Booker used a different route that place him on I-70 or was running a personal errand, Booker was acting in the course of his employment when the accident occurred. The dual purpose doctrine "provides that if the employee's work requires travel, the employee is deemed to be in the course of his employment although he may have been attending to a simultaneous personal purpose.... For the dual purpose doctrine to apply, the travel must have been necessary even in

7

the absence of a personal purpose. *Higgenbotham v. Pit Stop Bar and Grill, LLC*, 548 S.W.3d 323, 329 (Mo. Ct. App. 2018) (citing *Tuttle v. Muenks*, 964 S.W.2d 514, 518 (Mo. Ct. App. 1998)).

In *Higgenbotham*, upon which Plaintiff relies, an employee at defendant's bar and grill struck and killed another driver while transporting employer money for deposit at a bank after the bar closed. *Id.* at 327. The Missouri Court of Appeals found a genuine issue of material fact existed on plaintiff's claim of respondeat superior liability regarding whether the employee had a work purpose when he was involved in a vehicle accident. *Id.* Specifically, the *Higgenbotham* court held, "a reasonable juror presented with this evidence could find [plaintiff] was carrying out a necessary mission for Pit Stop, delivering proceeds to the bank, and thus was acting within the scope and course of his employment when he struck Decedent." *Id.* at 330. Plaintiffs contend the present case is analogous to *Higgenbotham* in that Booker was required to drive for his employment, delivered the mail both before and after the accident, and thus was driving the USPS vehicle to conduct his employer's business.

Plaintiffs overlook the fact that Booker drove the USPS vehicle outside authorized parameters of his mail route and normal duties. The location of the accident was not within the scope of Booker's deliveries, was not near his route, and was without permission. (Ex. B; Boyd-Garner Dep. 21:15-17). While Plaintiffs now claim there is no definitive evidence regarding the location of the accident, as stated above, the Plaintiffs testified the accident occurred on I-70 in the vicinity of the St. Louis Arch, which was well outside Booker's mail route. Further, the photograph of Booker's vehicle taken by Plaintiff Vardiman shows downtown St. Louis in the side view mirror. (Def.'s Ex. F) In addition, the Postal handbook prohibits deviations from a postal route unless authorized. It is undisputed Booker did not have authorization to be in

8

downtown St. Louis. Further, being downtown, outside of his mail route, during work hours would not further any business or interest of the USPS. Thus, the Court finds the dual purpose doctrine does not apply in this case because the evidence shows Booker did not deviate from his route to carry out a business mission and thus was not acting in the course and scope of his employment. *Higgenbotham*, 548 S.W.3d at 329. The Court finds Defendant USA has proffered substantial controverting evidence to overcome the presumption that Booker was acting in the scope of his employment when the accident occurred. Therefore, Defendant USA is entitled to sovereign immunity, and the Court will dismiss Counts I, V, IX, XIII, XVII, and XXI of Plaintiffs' Complaint for lack of subject matter jurisdiction.

## **B. Discretionary Function Exception**

Defendant USA argues the Court lacks jurisdiction over Plaintiffs' claims of negligent hiring, training, supervision, and retention because those are discretionary functions entitled to sovereign immunity. Plaintiffs contend Booker was cited for driving on a suspended license in 2013 and under the directives of USPS should have been suspended but was not.

Under 28 U.S.C. § 2680, the FTCA does not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The Supreme Court has set forth a two-part test to determine when the discretionary function exception applies. *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 795 (8th Cir. 1993). "The first requirement is that the conduct at issue indeed be discretionary, that is, it must 'involve [ ] an element of judgment or choice.'" *Id.* (quoting *Berkovitz v. United States,* 486 U.S. 531, 536 (1988). "Judgment or choice is absent 'when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow'

9

because then 'the employee has no rightful option but to adhere to the directive.'" *Id.* at 796 (quoting *Berkovitz,* 486 U.S. at 536).

The second requirement to the discretionary function exception "is that the judgment at issue be 'of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Berkovitz,* 486 U.S. at 536). "Because the exception's purpose is to prevent judicial second-guessing of government decisions based on public policy considerations, it protects only those judgments grounded in social, economic, and political policy." *Id.* at 796 (internal quotation marks and citation omitted).

Defendant USA argues the discretionary function exception applies to its hiring, training, supervision, and retention of Booker. "Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." *Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir. 1995). Further, "[p]ermitting FTCA claims involving negligent hiring would require this court to engage in the type of judicial second-guessing that Congress intended to avoid." *Id.*

Plaintiffs, however, argue the discretionary function exception does not apply in this case because Missouri statute and Postal Service guidelines require a USPS driver maintain a valid driver's license, and Booker was cited for driving on a suspended or revoked license in 2013, while he worked for the USPS. *See Berkovitz,* 486 U.S. at 536 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect."). Specifically, Plaintiffs contend the "Safety and Environmental

10

Performance Management, Employee Resource Management Manual" ("Manual") provides, postal service managers and supervisors are required to "suspend or revoke the Postal Service driving privileges of any employee who can't show you a current, valid state driver's license." (Pl.'s Ex. 1, ECF No. 30-1) Plaintiffs have also submitted Booker's driving record and allege Booker was driving on a suspended/revoked license on October 14, 2013. (Pls.' Ex. 2, ECF No. 30-2) Plaintiffs argue the USPS should have terminated Booker's employment due to his driving record, and failure to do so was not discretionary, thus waiving Defendant USA's sovereign immunity.

The Court finds Plaintiffs have not shown Defendant USA failed to follow a mandatory statute, rule or regulation. The report submitted by Plaintiffs fails to demonstrate Booker's license was suspended at the time of the accident in March 2016. (ECF No. 30-2) Further, the report shows Booker had a limited license with limited driving privileges, and he had no convictions until 2017, after the accident and after his termination. In addition, the Manual did not require the USPS to terminate Booker's employment, as Plaintiffs suggest. In short, the record is void of any evidence that Booker was in violation of USPS regulations or Missouri law at the time of the accident or any time while he was employed by the USPS, or that the USPS knew of any violations, that would overcome the discretionary function exception with respect to the supervision and retention of Booker. *But see Tonelli*, 60 F.3d at 496 (finding a genuine issue of material fact on supervision and retention claims where the post office failed to act when it had notice of illegal behavior).

Likewise, Plaintiffs' allegations of negligent hiring/training cannot survive the discretionary function inquiry. As stated above, second-guessing such employment choices would require an analysis by this Court that Congress sought to avoid. *Id.* Therefore, the Court

11

finds Plaintiffs' claims of negligent hiring/training and negligent supervision/retention fall within the discretionary function exception and are barred by sovereign immunity. Thus, the Court lacks subject matter jurisdiction and will dismiss Counts II, III, VI, VII, X, XI, XIV, XV, XVIII, XIX, XXII, and XXIII of Plaintiffs' Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 24) is **GRANTED**. A separate Order of Dismissal accompanies this Memorandum and Order.

Dated this 9th day of January, 2020.

_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**