UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORVETT VARDIMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:17-CV-2358 RLW |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court following the entry of default judgment against Defendant Aaron Booker, Jr. On September 10, 2020, default judgment was entered in favor of Plaintiff Norvett Vardiman and against Defendant Aaron Booker, Jr., as to Count IV of the Complaint (Negligence); in favor of Plaintiff Ronnie Gooch and against Defendant Aaron Booker, Jr., as to Count VIII of the Complaint (Negligence); in favor of Plaintiff Ania Warner and against Defendant Aaron Booker, Jr., as to Count XII of the Complaint (Negligence); in favor of Plaintiff Michael Hudson and against Defendant Aaron Booker, Jr., as to Count XVI of the Complaint (Negligence); in favor of Plaintiff Dennis Royal-Reed and against Defendant Aaron Booker, Jr., as to Count XX of the Complaint (Negligence); and in favor of Plaintiff Charles Singleton and against Defendant Aaron Booker, Jr., as to Count XXIV of the Complaint (Negligence). The Court entered Default Judgment against Defendant Booker as to liability but determined there was insufficient evidence to establish damages to a reasonable degree of certainty, and it set a hearing on damages for October 13, 2020. Everyday Learning Corp. v. Larson, 242 F.3d 815, 818-19 (8th Cir. 2001) (if the damages claim is indefinite or uncertain, the amount of damages must be proved to a reasonable degree of certainty). The hearing was reset and then cancelled due to issues related to COVID 19.

Plaintiffs have since filed written Proposed Findings of Fact and Conclusions of Law as to Damages, as well as additional exhibits. Defendant Booker failed to respond to Plaintiffs' filings.

After reviewing Plaintiffs' filings in this case, the Court concludes a hearing on damages is unnecessary, and it will decide the issue of damages based on the written record. Holman v. National Postal Mail Handlers Union, 117 F.3d 1422, 1424 (8th Cir. 1997) (district court was not required to hold an evidentiary hearing before assessing the amount of out-of-pocket medical expenses, where the uncontested amounts were "capable of ascertainment from definite figures in [witness] affidavit"). The Court makes the following findings regarding damages in this case.

### I.   Discussion

Plaintiffs have established that Defendant Booker is liable for negligence as a result the motor vehicle collision. On March 29, 2016, Plaintiffs Norvett Vardiman, Ronnie Gooch, Ania Warner, Michael Hudson, Dennis Royal-Reed, and Charles Singleton were traveling in a Chevrolet Avalanche on eastbound Interstate 70 in St. Louis, Missouri, when Defendant Aaron Booker, Jr., rear-ended Plaintiffs' vehicle. (ECF No. 48, Ex. 1 at 4-5). The force of the rear-end collision subsequently propelled Plaintiffs' vehicle into the adjacent wall of the highway. (Id. at 2, 5). Plaintiffs each reported experiencing pain to their bodies, including their arms, legs, backs, and necks, as a result of the accident. (Id. at 5).

### A.   Plaintiff Norvett Vardiman

On March 29, 2016, after the collision, Plaintiff Norvett Vardiman sought treatment for her injuries at Christian Hospital Northwest where she was diagnosed with strain of lumbar paraspinal muscle. (ECF No. 48, Ex. 2 at 1-7). Plaintiff Vardiman subsequently sought treatment from chiropractor William Droege for her accident-related injuries. (ECF No. 48, Ex. 3 at 3-13, Ex. 7 at 12-19). Plaintiff Vardiman received regular treatment from Dr. Droege between April 5,

2016 and June 20, 2016. (Id.) Dr. Droege ordered an MRI of Plaintiff Vardiman's lumbar spine which revealed disc protrusions at L1-L2, L4-L5, and L5-S1, as well as disc herniation at L2-L3. (ECF No. 48, Ex. 3 at 1-2).

Ms. Vardiman was also referred to pain management specialist Dr. Naseem Shekhani, who noted symptoms of chest, neck, and back pain, as well as pain radiating to her bilateral shoulders, buttocks, and thigh.  (ECF No. 48, Ex. 4). Dr.  Shekhani noted additional complaints that the pain experienced by Plaintiff Vardiman affected her appetite, sleep, socialization, and activities of daily living. (Id. at 5). Dr. Shekhani diagnosed Plaintiff Vardiman with cervicalgia with occipital headaches, bilateral shoulder injury, bilateral thigh pain, and lumbago with facet joint syndrome. (Id.).  Dr.  Shekhani treated Plaintiff Vardiman with facet joint injections, prescription therapy, performed a diagnostic right shoulder ultrasound, and ordered anti-inflammatories for her accident-related injuries between April 12, 2016 and October 12, 2016. (Id.).

Plaintiff Vardiman was subsequently referred to orthopedic specialist Dr.  Keith Wilkey, who evaluated Plaintiff Vardiman's symptoms on May 17, 2016 and July 5, 2016, prescribed medication, and ultimately referred Plaintiff Vardiman for a surgical evaluation due to her worsening symptoms. (ECF No. 48, Ex. 6).

Plaintiff Vardiman was referred to orthopedic surgeon Dr. Armond Levy, who evaluated Plaintiff Vardiman for her accident-related symptoms, ordered an EBI Stimulator, prescribed medication, performed injections, and ultimately performed surgery in the form of a Right L4-5 minimally invasive transforaminal lumbar interbody fusion. (ECF No. 48, Ex. 5 at 3-13, Ex. 2 at 8-19).

Plaintiff Vardiman's medical treatment resulted in medical expenses which totaled $189,571.07 prior to any reductions, payments, or other adjustments. (ECF No. 48, Ex. 7).  BJC

HealthCare billed Plaintiff Vardiman $770.00 for Dr. Adams's services. The bill was adjusted, and BJC HealthCare accepted $172.18 as payment on Plaintiff Vardiman's behalf. (ECF No. 48, Ex. 7 at 2). BJC HealthCare billed Plaintiff Vardiman $93,696.88 for Dr. Levy's services. The bill was adjusted and $21,195.05 was paid on Plaintiff Vardiman's behalf. (Id. at 7). BJC billed Plaintiff Vardiman $2,146.22 for Dr. Patel's services. The bill was adjusted and $479.79 was paid on Plaintiff Vardiman's behalf. (Id. at 9). Northwest Healthcare billed Plaintiff Vardiman $671.00. The bill was adjusted and $41.52 was paid, leaving a balance of $10.59. (Id. at 11). Esquire Sport billed Plaintiff Vardiman $6,077.00 for Dr. Droege's services. There is no evidence the bill was adjusted, or that payments have been made. (Id. at 19). Dr. Shekhani billed Plaintiff Vardiman $13,280.00. There is no evidence the bill was adjusted or that payments have been made. (Id. at 22). Opensided MRI of St. Louis billed $1695.00 for Dr. Diemer's services. There is no evidence the bill was adjusted or paid. (Id. at 20). Key Heath Medical Solutions billed Plaintiff Vardiman $1,896.97 for Drs. Wilkey's and Shekhani's services. There is no evidence the bill was paid or adjusted. (Id. at 23). Orthopedic Associates billed Plaintiff Vardiman $587.00, which was not adjusted or paid. (Id. at 24-25). St. Louis Neurosurgery billed Plaintiff Vardiman $63,600.00. There is no evidence this bill was adjusted or paid. (Id. at 26). Midwest Radiological Associates billed Plaintiff Vardiman $34.00, which was not adjusted or paid. (Id. at 30). And finally, there is an invoice for services by Dr. Levy for $5,890.00, which was not adjusted or paid.

Under Mo. Rev. Stat. § 490.715, a plaintiff seeking special damages for medical expenses "may introduce evidence of the actual cost of the medical care or treatment rendered to a plaintiff or a patient whose care is at issue. Actual cost of the medical care or treatment shall be reasonable, necessary, and a proximate result of the negligence or fault of any party." Mo. Rev. Stat. § 490.715. Actual cost of medical care or treatment is defined as "a sum of money not to exceed the dollar

amounts paid by or on behalf of a plaintiff or a patient whose care is at issue plus any remaining dollar amount necessary to satisfy the financial obligation for medical care or treatment by a health care provider after adjustment for any contractual discounts, price reduction, or write-off by any person or entity." Id.  The Court finds Plaintiff Vardiman is entitled to $114,956.10 in damages for medical expenses, which is the total amount paid, after any adjustments or write-offs, plus the outstanding balances.  There is insufficient evidence in the record to support an award of future medical expenses.

As for pain and suffering, on February 11, 2020, Plaintiff Vardiman filed an Affidavit in Support of Default Judgment. (ECF No. 35, Ex. 1 at 1-3).  Plaintiff Vardiman attested, under oath, that she suffered severe injuries as a result of the collision, that said injuries would require medical treatment throughout the course of her life, and that her damages have and will result in continued pain and suffering and loss of enjoyment of life.  (Id.).  Plaintiff Vardiman requests $850,000.00 in damages for incurred and future expenses, as well as incurred and future pain and suffering.

Under Missouri law, in general "an award of medical expenses alone without an award for pain and suffering is invalid and will be set aside 'almost as a matter of course.'" Meier v. Schrock, 405 S.W.3d 31, 35 (Mo. Ct. App. 2013) (quoting Davidson v. Schneider, 349 S.W.2d 908, 913 (Mo. 1961)).  A finder of fact "is bound to award damages commensurate with the nature and extent of the plaintiff's injuries."  Id.  That said, "[a]wards for pain and suffering are highly subjective" because "[t]here is no precise or exact measuring stick for calculating general damages for pain and suffering." Gonzalez v. United States, 681 F.3d 949, 952–53 (8th Cir. 2012). "Depending upon the fact situation, the range between an inadequate award for pain and suffering and an excessive award can be enormous." Id.

It is difficult to put a figure on the amount of pain and suffering a plaintiff has endured and will endure in the future. Here, the plaintiff seeks an amount that is approximately three and a half times the amount of the total amount she seeks for medical expenses. Given the nature of the collision, Plaintiff Vardiman's injuries, the resulting medical treatment, and the statements in the plaintiff's affidavit, Court finds it is reasonable to award Plaintiff Vardiman $229,912.20 for her incurred and future pain and suffering.

### B.   Plaintiff Ronnie Gooch

Subsequent to the collision, Plaintiff Ronnie Gooch began experiencing painful symptoms to her neck and back. (Doc. 48-8). She then sought treatment from pain management specialist Dr. Adeluola G. Lipede at Marantha Healthcare for her injuries. (ECF No. 48, Ex. 8). Plaintiff Gooch received physical therapy, prescription therapy, and ongoing evaluations and treatment for his or her accident-related injuries from Dr. Lipede between April 6, 2016 and June 7, 2016. (Id.).

Plaintiff Gooch medical treatment resulted in medical expenses which totaled $5,825.41, prior to any reductions, payments, or other adjustments. (ECF No. 48, Ex. 9). Key Heath Medical Solutions billed Plaintiff Gooch $2,477.41 for Dr. Lipede services. There is no evidence the bill was paid or adjusted. (Id. at 1). Maranatha Healthcare billed Plaintiff Gooch $3,348.00. There is no evidence the bill was paid or adjusted. (Id. at 4). The Court finds Plaintiff Gooch is entitled to $5,825.41 in damages for medical expenses, which is the total amount paid, after any adjustments or write-offs, plus the outstanding balances. There is insufficient evidence in the record to support an award of future medical expenses.

As for pain and suffering, on February 11, 2020, Plaintiff Gooch filed with this Court her Affidavit in Support of Default Judgment. (ECF No. 35, Ex. 1 at 4-6). Plaintiff Gooch attested, under oath, that she suffered severe injuries as a result of the collision, that said injuries would

6

require medical treatment throughout the course of her life, and that her damages have and will result in continued pain and suffering and loss of enjoyment of life. (Id.) Plaintiff Gooch requests $65,000.00 in damages for incurred and future medical expenses, as well as incurred and future pain and suffering.  Plaintiff Gooch seeks an amount in pain and suffering damages that is more than 10 times the amount of the total amount she seeks for medical expenses.  Given the nature of the of the collision, Plaintiff Gooch's injuries, the resulting medical treatment, and the statements in the plaintiff's affidavit, Court finds it is reasonable to award Plaintiff Gooch $11,650.82 for her incurred and future pain and suffering.

      **C.**      **Plaintiff Ania Warner**

On March 29, 2016, after the collision, Plaintiff Ania Warner sought treatment at the emergency department at Christian Hospital for chief complaints of pain to her right shoulder, right arm, and back. (ECF No. 48, Ex. 10). She was diagnosed by emergency department physicians with dorsa liga; pain in right shoulder; strain of unspecified muscle, fascia, and tendon at shoulder and upper arm level, right arm as a result of the collision. (Id. 4). Due to a continuation of painful symptoms, she sought treatment from chiropractic specialist Dr. William Droege, who treated Plaintiff Warner between April 4, 2016 and June 15, 2016. (ECF No. 48, Ex. 11). Dr. Droege ordered an MRI of Plaintiff Warner's lumbar spine to rule out the presence of any lumbar disc injuries. (Id. at 1).

Plaintiff Warner was referred to pain management specialist Dr. Naseem Shekhani, who noted complaints of pain to Plaintiff Warner's neck, back, and bilateral shoulders following the collision. (ECF No. 48, Ex. 12 at 2-9). Plaintiff Warner additionally notified Dr. Shekhani of pain radiating to her left knee, pain to her ribs, a "dragging" feeling in her buttocks, and numbness and tingling in her left knee. (Id. at 9). Plaintiff Warner further noted that the pain disturbed her sleep

and appetite. (Id.). Dr. Shekhani performed a diagnostic ultrasound of the bilateral shoulder which revealed a supraspinatus tear at the right shoulder and subacromial bursitis of the left shoulder. (Id. at 2).  In connection with her accident-related injuries, Dr. Shekhani continued to evaluate and monitor Plaintiff Warner's symptoms, advised her on a home exercise regimen, advised that she continue her chiropractic treatment with Dr. Droege, and prescribed various pain-relieving medications. (ECF No. 48, Ex. 12 at 2-9).

Plaintiff Warner medical treatment resulted in medical expenses which totaled $11,283.31, prior to any reductions, payments, or other adjustments. (ECF No. 48, Ex. 13).  BJC HealthCare billed Plaintiff Warner $770.00 by for Dr. Ali's services.  The bill was adjusted, and BJC HealthCare accepted $308.00 as payment on Plaintiff Warner's behalf.  (ECF No. 48, Ex. 13 at 2). Northwest Healthcare billed Plaintiff Warner $671.00 for an ER visit.   There is no evidence the bill was adjusted or paid.  (Id. at 4).  Esquire Sports billed Plaintiff Warner $5,213.00 for Dr. Droege's services.  There is no evidence the bill was adjusted or paid.  (Id. at 11). Key Health Medical Solutions billed Plaintiff Warner $1,294.31 for Drs. Giffey's and Shekhani's services. There is no evidence this bill was adjusted or paid.  (Id. at 13).  Opensided MRI of St. Louis billed $1,695.00 for Dr. Baber's services, and $1,695.00 was paid on her behalf.     (Id. at 12).  Dr. Shekhani billed Plaintiff Warner $1,640.00, and again, there is no evidence the bill was paid or adjusted.  (Id. at 14).  The Court finds Plaintiff Warner is entitled to $10,821.31 in damages for medical expenses, which is the total amount paid, after any adjustments or write-offs, plus the outstanding balances.   There is insufficient evidence in the record to support an award of future medical expenses.

As for pain and suffering, on February 11, 2020, Plaintiff Warner filed with this Court her Affidavit in Support of Default Judgment.  (ECF No. 35, Ex. 1 at 7-8).  Plaintiff Warner attested,

8

under oath, that she suffered severe injuries as a result of the collision, that said injuries would require medical treatment throughout the course of her life, and that her damages have and will result in continued pain and suffering and loss of enjoyment of life. (Id.) Plaintiff Warner requests $85,000.00 in damages for incurred and future medical expenses, as well as incurred and future pain and suffering. Plaintiff Warner seeks an amount in pain and suffering damages that is more than six times the amount of the total amount she seeks for medical expenses. Given the nature of the of the collision, Plaintiff Warner's injuries, the resulting medical treatment, and the statements in the plaintiff's affidavit, Court finds it is reasonable to award Plaintiff Warner $21,642.62 for her incurred and future pain and suffering.

### D.     Plaintiff Michael Hudson

On March 29, 2016, subsequent to the collision, Plaintiff Michael Hudson sought treatment from the emergency department at Christian Hospital Northwest with chief complaints of pain to his head, neck, back. (ECF No. 48, Ex. 14). Plaintiff Hudson was evaluated by emergency department physicians where he received imaging to his cervical spine and prescription medication for his injuries. (Id. at 6-7). He was diagnosed with cervicalgia; headache; low back pain; strain of muscle, fascia, and tendon at neck level; strain of muscle, fascia, and tendon of lower back; and muscle spasm of back. (Id. at 3).

Plaintiff Hudson then sought treatment from chiropractic specialist Dr. William Droege, who treated Plaintiff Hudson on two occasions. (ECF No. 48, Ex. 15, and Ex. 17 at 6). Dr. Droege ordered an MRI of Plaintiff Hudson's lumbar spine which revealed a large left disc herniation at L2-L3 and facet joint arthropathy. (ECF No. 48, Ex. 15 at 1).

Plaintiff Hudson additionally sought treatment from pain management specialist Dr. Adella G. Lipede at Marantha Healthcare. (ECF No. 48, Ex. 16). Plaintiff Hudson received physical

therapy, prescription therapy, and ongoing evaluations and treatment from Dr. Lipede between April 12, 2016 and June 16, 2016 for his accident-related injuries. (ECF No. 48, Ex. 16).

Plaintiff Hudson's medical treatment resulted in medical expenses which totaled $14,191.64 prior to any reductions, payments, or other adjustments. (ECF No. 48, Ex. 18). BJC HealthCare billed Plaintiff Hudson $1,722.61 for Dr. Adams's services. The bill was adjusted, leaving a balance of $1,120.00. (ECF No. 48, Ex. 18 at 2). Northwest Healthcare billed Plaintiff Hudson $996.00 for an ER visit. There is no evidence the bill was adjusted or paid. (Id. at 3). Midwest Radiological Associates billed Plaintiff Hudson $32.00. The bill was contractually adjusted by $14.82 and $17.18 was written off, leaving a $0.00 balance. (Id. at 5). Esquire Sports billed Plaintiff Hudson $793.00. There is no evidence the bill was adjusted or paid. (Id. at 16). Key Health Medical Solutions billed Plaintiff Hudson $3,805.03 for Drs. Lipede's and Adams's services. There is no evidence this bill was adjusted or paid. (Id. at 13). Maranatha Healthcare billed Plaintiff Hudson $5,148.00. There is no evidence the bill was paid or adjusted. (Id. at 17). Opensided MRI of St. Louis billed $1,695.00 for Dr. Diemer's services. There is no evidence the bill was adjusted or paid. (Id. at 18). The Court finds Plaintiff Hudson is entitled to $13,557.03 in damages for medical expenses, which is the total amount paid, after any adjustments or write-offs, plus the outstanding balances. There is insufficient evidence in the record to support an award of future medical expenses.

As for pain and suffering, on February 11, 2020, Plaintiff Hudson filed with this Court his Affidavit in Support of Default Judgment. (ECF No. 35, Ex. 1 at 10-12). Plaintiff Hudson attested, under oath, that he suffered severe injuries as a result of the collision, that said injuries would require medical treatment throughout the course of his life, and that his damages have and will result in continued pain and suffering and loss of enjoyment of life. (Id.) Plaintiff Hudson requests

$120,000.00 in damages for incurred and future medical expenses, as well as incurred and future pain and suffering. Plaintiff Hudson seeks an amount in pain and suffering damages that is more than seven times the amount of the total amount he seeks for medical expenses. Given the nature of the of the collision, Plaintiff Hudson's injuries, the resulting medical treatment, and the statements in the plaintiff's affidavit, Court finds it is reasonable to award Plaintiff Hudson $27,114.06 for his incurred and future pain and suffering.

> E.  **Plaintiff Dennis Royal-Reed**

On March 29, 2016, subsequent to the collision, Plaintiff Dennis Royal-Reed sought treatment from Christian Hospital, BCJ Healthcare, with chief complaints of pain to his head, back, left shoulder, and left arm. (ECF No. 48, Ex. 19 at 3-4). Emergency physicians ordered imaging of Plaintiff Royal-Reed's lumbar spine and prescribed medication. (Id. at 9-11). Plaintiff Royal-Reed was diagnosed with strain of muscle, fascia, and tendon of lower back, and strain of muscles, fascia, and tendons at left shoulder and upper arm. (Id. at 3).

Plaintiff Royal-Reed then sought treatment from chiropractic specialist Dr. William Droege, who treated Plaintiff Royal-Reed from April 4, 2016 through June 1, 2016, for his injuries resulting from the collision. (ECF No. 48, Ex. 19, and Ex. 22 at 7-11). Dr. Droege ordered an MRI of the lumbar spine which revealed a central disc extrusion/herniation at L5-S1. (ECF No. 48, Ex. 19 at 1).

Plaintiff Royal-Reed was referred to pain management specialist Dr. Naseem Shekhani, who noted complaints of pain to Plaintiff Royal-Reed's neck and bilateral shoulders, complaints of headaches, and appetite and sleep disturbance. (ECF No. 48, Ex. 20 at 4-9). Dr. Shekhani prescribed medication to Plaintiff Royal-Reed and advised him to continue therapy with Dr. Droege. (Id.).

Plaintiff Royal-Reed was also referred to orthopedic specialist Dr. Keith Wilkey for further evaluation of his symptoms. (ECF No. 48, Ex. 21). Dr. Wilkey noted complaints of back pain with associated symptoms of tingling to his left leg. (Id. at 2-3). Dr. Wilkey ordered Plaintiff Royal-Reed to continue his therapy with Dr. Droege, prescribed oral medication. (Id.). Dr. Wilkey additionally ordered that Plaintiff Royal-Reed remain off of work due to his inability to lift objects as a result of his accident-related injuries. (Id.).

Plaintiff Royal-Reed's medical treatment resulted in medical expenses totaling $11,390.43 prior to any reductions, payments, or other adjustments. (ECF No. 48, Ex. 23). BJC HealthCare billed Plaintiff Royal-Reed $1,157.00 for Dr. Adams's services. The bill was adjusted for a self-pay discount, leaving a balance of $694.20. (Id. at 2). Northwest Healthcare billed Plaintiff Royal-Reed $996.00 for an ER visit. There is no evidence the bill was adjusted or paid. (Id. at 4). Midwest Radiological Associates billed Plaintiff Royal-Reed $34.00, which was written off, leaving a $0.00 balance. (Id. at 6). Esquire Sports billed Plaintiff Royal-Reed $4,133.00. There is no evidence the bill was adjusted or paid. (Id. at 11). Opensided MRI of St. Louis billed $1,695.00 for Dr. Baber's services. There is no evidence the bill was adjusted or paid. (Id. at 12). Key Health Medical Solutions billed Plaintiff Royal-Reed $1,501.43 for Drs. Wilkey's, Griffey's and Shekhani's services. There is no evidence this bill was adjusted or paid. (Id. at 13). Dr. Shekhani billed Plaintiff Royal-Reed $1,560.00. There is no evidence this bill was adjusted or paid. (Id. at 14). Orthopedic Associates, LLC, billed $314.00, and there is evidence $314.00 was to be paid on Plaintiff Royal-Reed's behalf. The Court finds Plaintiff Hudson is entitled to $10,893.63 in damages for medical expenses, which is the total amount paid, after any adjustments or write-offs, plus the outstanding balances. There is insufficient evidence in the record to support an award of future medical expenses.

As for pain and suffering, on February 11, 2020, Plaintiff Royal-Reed filed with this Court his Affidavit in Support of Default Judgment. (ECF No. 35, Ex. 1 at 13-15). Plaintiff Royal-Reed attested, under oath, that he suffered severe injuries as a result of the collision, that said injuries would require medical treatment throughout the course of his life, and that his damages have and will result in continued pain and suffering and loss of enjoyment of life. (Id.) Plaintiff Royal-Reed requests $105,000.00 in damages for incurred and future medical expenses, as well as incurred and future pain and suffering. Plaintiff Royal-Reed seeks an amount in pain and suffering damages that is more than eight times the amount of the total amount he seeks for medical expenses. Given the nature of the of the collision, Plaintiff Royal-Reed's injuries, the resulting medical treatment, and the statements in the plaintiff's affidavit, Court finds it is reasonable to award Plaintiff Royal-Reed $21,787.26 for his incurred and future pain and suffering.

### F.     Plaintiff Charles Singleton

On March 29, 2016, subsequent to the collision, Plaintiff Charles Singleton sought treatment at Christian Hospital, of BJC HealthCare, with chief complaints of pain to his right shoulder, right arm, right knee, neck, and back. (DECF No. 48, Ex. 24 at 3-4). Emergency department physicians ordered imaging of the right knee and prescribed ibuprofen. (Id. at 10-11). Emergency department physicians diagnosed Plaintiff Singleton with dorsalgia; pain in right knee, cervicalgia; strain of muscles, fascia, and tendons at shoulder and upper arm level, right arm; strain of muscle and tendon of back wall of thorax; and contusion of right knee. (Id. at 3).

Plaintiff Singleton then sought treatment from chiropractic specialist Dr. William Droege, who treated Plaintiff Singleton between April 5, 2016 and June 15, 2016. (ECF No. 48, Ex. 25, and Ex. 27 at 6-11). Dr. Droege ordered an MRI of Plaintiff Singleton's lumbar spine, which

revealed a disc herniation and disc desiccation at L5-S1 with posterior extension 3-5 mm. ECF No. 48, Ex. 25 at 1).

Plaintiff Singleton then sought treatment from pain management specialist Dr. Adeluola G. Lipede at Marantha Healthcare for his collision-related injuries. (ECF No. 48, Ex. 26). Plaintiff Singleton received physical therapy, intra-lesional injections, and prescription medication from Dr. Lipede in an attempt to alleviate his pain. (Id.).

Plaintiff Singleton additionally sought treatment from pain management specialist Dr. Naseem Shekhani, who notes complaints of neck pain, back pain, wrist pain, and bilateral knee pain related to the collision. (ECF No. 48, Ex. 27). Plaintiff Singleton also noted disturbances to his sleep and appetite as a result of his injuries and associated pain. (Id.). Plaintiff Singleton advised Dr. Shekhani that his painful symptoms resulted in difficulties dressing, bathing, showering, and had negatively affected his sexual activity. (Id.). Dr. Shekhani advised Plaintiff Singleton to continue his therapy with Dr. Droege, advised him on a home exercise regimen, and prescribed pain medication. (Id.). Dr. Shekhani performed trigger point injections to the lumbar spine at L3, L4, and L5. (Id. at 11-12).

Plaintiff Singleton's medical treatment resulted in medical expenses which totaled $17,149.66 prior to any reductions, payments, or other adjustments. (ECF No. 48, Ex. 28). BJC HealthCare billed Plaintiff Singleton $1,229.00 for Dr. Adams's services. The bill was adjusted for a self-pay discount and "Presumptive Assistance" leaving a balance of $0.00. (Id. at 2). Northwest Healthcare billed Plaintiff Singleton $996.00 for an ER visit. There is no evidence the bill was adjusted or paid. (Id. at 3). Midwest Radiological Associates billed Plaintiff Singleton $35.00, which was written off, leaving a $0.00 balance. (Id. at 5). Esquire Sports billed Plaintiff Singleton $4,334.00. There is no evidence the bill was adjusted or paid. (Id. at 11). Mananathan

Healthcare billed Plaintiff Hudson $584.00.  There is no evidence the bill was paid or adjusted.  (Id. at 12).  Opensided MRI of St. Louis billed $1,695.00 for Dr. Diemer's services.  There is no evidence the bill was adjusted or paid.  (Id. at 13).  Key Health Medical Solutions billed Plaintiff Singleton $2,401.66 for Drs. Nallapaneni's and Shekhani's services.  There is no evidence this bill was adjusted or paid.  (Id. at 14-15).  Dr. Shekhani billed Plaintiff Singleton $5,875.00.  There is no evidence this bill was adjusted or paid.  (Id. at 16).  The Court finds Plaintiff Hudson is entitled to $15,885.66 in damages for medical expenses, which is the total amount paid, after any adjustments or write-offs, plus the outstanding balances.   There is insufficient evidence in the record to support an award of future medical expenses.

As for pain and suffering, on February 11, 2020, Plaintiff Singleton filed with this Court his Affidavit in Support of Default Judgment.  (ECF No. 35, Ex. 1 at 16-18).  Plaintiff Singleton attested, under oath, that he suffered severe injuries as a result of the collision, that said injuries would require medical treatment throughout the course of his life, and that his damages have and will result in continued pain and suffering and loss of enjoyment of life.  (Id.)  Plaintiff Singleton requests $125,000.00 in damages for incurred and future medical expenses, as well as incurred and future pain and suffering.  Plaintiff Singleton seeks an amount in pain and suffering damages that is more than six times the amount of the total amount he seeks for medical expenses.  Given the nature of the of the collision, Plaintiff Singleton's injuries, the resulting medical treatment, and the statements in the plaintiff's affidavit, Court finds it is reasonable to award Plaintiff Singleton $31,771.32 for his incurred and future pain and suffering.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Norvett Vardiman is entitled to One Hundred Fourteen Thousand Nine Hundred Fifty-Six Dollars and Ten Cents ($114,956.10) in damages for

15

her incurred medical expenses, and Two Hundred Twenty-Nine Thousand Nine Hundred Twelve Dollars and Twenty Cents ($229,912.20) in damages for her incurred and future pain and suffering, for a total of Three Hundred Forty-Four Thousand Eight Hundred Sixty-Eight Dollars and Thirty Cents ($344,868.30) against Defendant Aaron Booker, Jr.

**IT IS FURTHER ORDERED** that Plaintiff Ronnie Gooch is entitled Five Thousand Eight Hundred Twenty-Five Dollars and Forty-One Cents ($5,825.41) in damages for her incurred medical expenses, and Eleven Thousand Six Hundred Fifty Dollars and Eighty-Two Cents ($11,650.82) in damages for her incurred and future pain and suffering, for a total of Seventeen Thousand Four Hundred Seventy-Six Dollars and Twenty-Three Cents ($17,476.23) against Defendant Aaron Booker, Jr.

**IT IS FURTHER ORDERED** that Plaintiff Ania Warner is entitled to Ten Thousand Eight Hundred Twenty-One Dollars and Thirty-One Cents ($10,821.31) in damages for her incurred medical expenses, and Twenty-One Thousand Six Hundred Forty-Two Dollars and Sixty-Two Cents ($21,642.62) in damages for her incurred and future pain and suffering, for a total of Thirty-Two Thousand Four Hundred Sixty-Three Dollars and Ninety-Three Cents ($32,463.93) against Defendant Aaron Booker, Jr.

**IT IS FURTHER ORDERED** that Plaintiff Michael Hudson is entitled to Thirteen Thousand Five Hundred Fifty-Seven Dollars and Three Cents ($13,557.03) in damages for his incurred medical expenses, and Twenty-Seven Thousand One Hundred Fourteen Dollars and Six Cents ($27,114.06) in damages for his incurred and future pain and suffering, for a total of Forty Thousand Six Hundred Seventy-One Dollars and Nine Cents ($40,671.09) against Defendant Aaron Booker, Jr.

**IT IS FURTHER ORDERED** that Plaintiff Dennis Royal-Reed is entitled to Ten Thousand Eight Hundred Ninety-Three Dollars and Sixty-Three Cents ($10,893.63) in damages for his incurred medical expenses, and Twenty-One Thousand Seven Hundred Eighty-Seven Dollars and Twenty-Six Cents ($21,787.26) in damages for his incurred and future pain and suffering, for a total of Thirty-Two Thousand Six Hundred Eighty Dollars and Eighty-Nine Cents ($32,680.89) against Defendant Aaron Booker, Jr.

**IT IS FURTHER ORDERED** that Plaintiff Charles Singleton is entitled to Fifteen Thousand Eight Hundred Eighty-Five Dollars and Sixty-Six Cents ($15,885.66) in damages for his incurred medical expenses, and Thirty-One Thousand Seven Hundred Seventy-One Dollars and Thirty-Two Cents ($31,771.32) in damages for his incurred and future pain and suffering for a total of Forty-Seven Thousand Six Hundred Fifty-Six Dollars and Ninety-Eight Cents ($47,656.98) against Defendant Aaron Booker, Jr.

A separate Final Judgment shall accompany this Memorandum and Order.

_/s/ Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this __28th__ day of October 2021.